Daniel A. ROBIDA, Petitioner-Appellee,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent-Appellant.

No. 26910.

United States Court of Appeals,
Ninth Circuit.

May 23, 1972.

Janet R. Spragens (argued), Bennet N. Hollander, Meyer Rothwacks, Fred B. Ugast, Acting Asst. Atty. Gen., Johnnie M. Walters, Asst. Atty. Gen., Washington, D. C., K. Martin Worthy, INS, Washington, D. C., for respondent-appellant.

Drew M. Johnson (argued), of Luther, Luther, O'Connor & Johnson, Sacramento Cal., for petitioner-appellee.

Before DUNIWAY and ELY, Circuit Judges and BYRNE, Jr., District Judge.*

DUNIWAY, Circuit Judge:

The Commissioner of Internal Revenue determined substantial deficiencies in Robida's federal income tax for the years 1956–61. The tax court held that the income in question was exempt under section 911 of the Internal Revenue Code of 1954.[1] The Commissioner appeals. We affirm.

### BACKGROUND

Robida is an American citizen who lived abroad during the years in question and who derived his income from slot machine pay-offs in various United States military service clubs. To eliminate the element of chance and thereby guarantee his "winnings," Robida would manipulate the slot machines, using spe-

---

* Honorable Wm. Matthew Byrne, Jr., United States District Judge, Central District of California, sitting by designation.

1. 26 U.S.C. § 911 provides, in pertinent part:

"(a) *General Rule.*—The following items shall not be included in gross income and shall be exempt from taxation under this subtitle:

. . . .

(2) *Presence in foreign country for 17 months.*—In the case of an individual citizen of the United States, who during any period of 18 consecutive months is present in a foreign country or countries during at least 510 full days in such period, amounts received from sources without the United States (except amounts paid by the United States or an agency thereof) if such amounts constitute earned income (as defined in subsection (b)) attributable to such period;

. . . . .

(b) *Definition of earned income.*— For purposes of this section, the term "earned income" means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered, . . . . In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, under regulations prescribed by the Secretary or his delegate, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income."

cial knowledge he acquired from employees of the Japanese manufacturer of the machines. He excluded the income thus derived from taxable gross income pursuant to 26 U.S.C. § 911, which permits an exemption for "earned income" in the case of a United States citizen living abroad for at least 510 days in a period of 18 consecutive months.

The tax court initially denied the § 911 exemption to Robida, but we remanded to permit further discovery of documents then being held by German government authorities. Robida v. Commissioner, 9 Cir., 1967, 371 F.2d 518. In the proceedings on remand the tax court reversed its previous position and held that the income in question was "earned income" within the meaning of § 911(b).

## APPLICABILITY OF § 911 EXEMPTION

The statute applies to an individual United States citizen who is abroad for a defined length of time. Robida is admittedly such an individual; the only question is whether his income from slot machine pay-offs is "earned income" under § 911.

■ Earned income is defined in § 911(b) as "wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered." The Commissioner emphasizes the commonly understood meanings of "compensation," "services," and "rendered" to arrive at his conclusion that Robida's income does not come within the definition. However, such a position misplaces the proper emphasis. The distinction Congress created is between income which is earned and income which is not earned. Congress made it clear when it devised the definition for earned income that it meant to include all income not representing re-

turn on capital. *See* H.R.Rept. 179, 68th Cong., 1st Sess., 1924, reproduced in Internal Revenue Cum.Bull., 1939–1, part 2, pp. 245–46. Income which accrued to the individual from application of his personal skills, whether received in the form of wages, salaries, professional fees or otherwise, was intended to be "earned" income. Income which accrued to the individual as return on capital was not considered "earned." The tax court labeled the two as *active income* ("income derived from the use of the taxpayer's personal expenditure of time, energy and skill") and *passive income* ("income derived from the use of his property").

■ Gambling receipts have been considered in the latter category, more clearly akin to return on capital (*i. e.*, money invested in an unusually risky venture) than earned compensation for services performed.[2] The Commissioner calls Robida's activities "successful gambling." We do not agree. The tax court found Robida's manipulation of slot machines to be "the diligent application of an unusual skill or knowledge gained during his previous employment with a manufacturer of slot machines which enabled him to extract money from these machines wherever he could find them." He did not "win" his income in a game of chance; he did not risk his capital, nor receive his income as a return on capital. He "earned" it by applying his personal and unique skills, for which he was handsomely recompensed.

■ The Commissioner argues that Robida cannot be said to have "rendered services" to anyone, because there was no other person than himself who received his services or paid him for them. The fact that the payor was a machine, which was merely a conduit for the slot machine concessionaire, rather than a person who was grateful for the service

2. Revenue Ruling 66–171, 1955–1 Internal Revenue Cum.Bull. 80, p. 87, section 7.01, lists "gambling gains" as a type of income which is not "earned income" within the meaning of § 911(b). Other items in the list include "dividends, other distributions of corporate earnings or profits, . . . interest, rents, or gains and profits from dealing in real or personal property."

Robida rendered, makes no difference in determining whether Robida "earned" his income or not. While it is true that one normally renders services to another person, who pays for them, we need not quibble over whether Robida rendered services to himself or whether he rendered services to the slot machine concessionaires. The dichotomy which Congress established simply does not, and should not, turn on such semantic haggling. Congress meant income derived from labor, broadly defined, to be earned income and income derived from the use of property not to be earned income for the purpose of § 911.

This reading of Congressional intent is buttressed by § 911(b) itself. In that section Congress was careful, after defining earned income, to provide: "In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, . . . a reasonable allowance as compensation for the personal services rendered by the taxpayer . . . should be considered as earned income." The key element is the presence or absence of capital as the income-producing factor, not the existence or nonexistence of an independent recipient for the personal services rendered by the taxpayer.

The correctness of the tax court's interpretation of the statute is not diminished by the fact that Congress subsequently decided to exclude certain "active" income from the § 911 exemption. Thus earned income is not exempt under § 911 if its source is the United States government. That provision was added in 1932 (Revenue Act of 1932, ch. 209, § 116, 47 Stat. 204) because employees of the United States were usually exempt from foreign tax upon their salaries and thus one of the purposes of § 911 (then § 116)—avoiding double taxation of United States citizens—was not being served in the case of United States government employees. *See* S.

Rept. 665, 72 Cong., 1st Sess., reproduced in Internal Revenue Cum.Bull., 1939–1, part 2, p. 519, and H.R.Rept. 1492, id., p. 540.[3] However, those reasons are irrelevant to the tax court's active-passive income interpretation of the statute and in no way militates against that construction.

If Congress should agree with the Commissioner that Robida's method of earning income while abroad is morally reprehensible and that therefore his income should not be exempt, it can amend the statute. So far it has not done so, nor has it authorized the Commissioner to exclude from § 911 income which he considers to have been gained in a disreputable activity.

Having decided that no deficiencies exist in Robida's taxable income for the years 1956–61, we need not reach his further contention that the Commissioner is barred by the applicable statute of limitations from asserting deficiencies for the years 1956 and 1957.

Affirmed.

---

3. It is interesting to note that the Senate recommended repeal of § 911 entirely, but eventually compromised to permit the exclusion to remain for everyone except United States government employees.